IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD JASON CAMPBELL, JR., | ) | CASE NO. 4:14 CV 798 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Ronald Jason Campbell, Jr. under 42 U.S.C. § 405(g) for

judicial review of the final decision of the Commissioner of Social Security denying his

application for supplemental security income.[2] The Commissioner has answered[3] and filed

---

[1] ECF # 18. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 14.

the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9]

**B.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Campbell, who was 20 years old at the time of the hearing,[10] graduated from high school although he was under an Individualized Education Plan (IEP) as a result of various factors.[11] He worked briefly as a dishwasher at Denny's, but that work did not qualify as substantial gainful employment.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Campbell had the following medically determinable impairments: history of alcohol abuse, mood disorder, anxiety, attention deficit disorder [ADD]/attention deficit hyperactivity disorder [ADHD], oppositional defiant disorder [ODD].[13] The ALJ first considered and

---

[4] ECF # 15.

[5] ECF # 10.

[6] ECF # 16.

[7] ECF # 19 (Campbell's brief); ECF # 23 (Commissioner's brief).

[8] ECF # 20 at 3-8 (Campbell's charts); ECF # 23-1 (Commissioner's charts).

[9] ECF # 20 at 1-2 (Campbell's fact sheet).

[10] Transcript ("Tr.") at 64.

[11] *Id.* at 39, 202, 221, 227.

[12] *Id.* at 23, 40.

[13] *Id.* at 23.

rejected, the expert testimony as to whether Campbell's impairments would produce symptoms of the required intensity and persistence, and with the required limiting effects.[14] Then, after evaluating Campbell's mental impairments in light of the four functional areas of paragraph B of Section 12.00C of the listings, the ALJ further found that Campbell does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months, and, therefore, Campbell does not have a severe impairment or combination of impairments.[15]

The ALJ, therefore, found Campbell at Step Two to be not under a disability.[16]

## C.     Issues on judicial review and decision

Campbell asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Campbell presents the following issues for judicial review:

- The ALJ's finding that Campbell did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities is not supported by substantial evidence. It was, therefore, error for the ALJ to discontinue the disability analysis at Step Two.

- The ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in assessing the required factors in determining Campbell's credibility.

---

[14] *Id.* at 24-26.

[15] *Id.* at 26-27.

[16] *Id.* at 27.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.    Standards of review**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[17]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[17] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-4-

survives "a directed verdict" and wins.[18] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[19]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. Treating physician rule and good reasons requirement

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[20]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[21]

---

[18] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[19] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[20] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). [Plaintiff's last name only] filed only an application for supplemental security income benefits.

[21] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[22] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[23]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[24] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[25] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[26] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[27]

In *Wilson v. Commissioner of Social Security*,[28] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[22] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[23] *Id.*

[24] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[25] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[26] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[27] *Id.* at 535.

[28] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

-6-

the context of a disability determination.[29] The court noted that the regulation expressly contains a "good reasons" requirement.[30] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[31]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[32] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[33] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[34] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[29] *Id.* at 544.

[30] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[31] *Id.* at 546.

[32] *Id.*

[33] *Id.*

[34] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[35]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[36] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[37] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[38] *Blakley v. Commissioner of Social Security*,[39] and *Hensley v. Astrue*.[40]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[41] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[42] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's

---

[35] *Id.*

[36] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[37] *Id.* at 375-76.

[38] *Rogers*, 486 F.3d at 242.

[39] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[40] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[41] *Gayheart*, 710 F.3d at 376.

[42] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[43] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[44]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[45] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[46] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[47] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[48] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[49]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[43] *Id.*

[44] *Rogers*, 486 F.3d at 242.

[45] *Gayheart*, 710 F.3d at 376.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[50]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[51] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[52] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[53] or that objective medical evidence does not support that opinion.[54]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[50] *Id.*

[51] *Rogers*, 486 F.3d 234 at 242.

[52] *Blakley*, 581 F.3d at 406-07.

[53] *Hensley*, 573 F.3d at 266-67.

[54] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[55] The Commissioner's *post hoc* arguments on judicial review are immaterial.[56]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[57]

- the rejection or discounting of the weight of a treating source without assigning weight,[58]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[59]

---

[55] *Blakley*, 581 F.3d at 407.

[56] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[57] *Blakley*, 581 F.3d at 407-08.

[58] *Id.* at 408.

[59] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[60]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[61] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[62]

The Sixth Circuit in *Blakley*[63] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[64] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[65]

In *Cole v. Astrue*,[66] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[60] *Id.* at 409.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend*, 375 F. App'x at 551-52.

[63] *Blakley*, 581 F.3d 399.

[64] *Id.* at 409-10.

[65] *Id.* at 410.

[66] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-12-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[67]

## B.    Application of standards

As noted, the Commissioner's decision here rests on the ALJ's conclusion at Step Two of the sequential evaluation process that Campbell does not have a severe impairment such as would significantly limit his ability to perform work-related functions. To that end, the decision discounted two opinions of Cesar Ariza, Ph.D., Campbell's treating psychologist, because the opinions were not consistent with each other.[68]

Here, Campbell argues that Dr. Ariza specialized in psychology and treated Campbell multiple times throughout 2012 and 2013, during which he continuously monitored Campbell's depression and anxiety, as well as prescribed treatment.[69] As such, Campbell asserts, the ALJ should have determined that these factors support affording Dr. Ariza's opinions controlling weight.[70] Moreover, Campbell further maintains that Dr. Ariza's opinions deserve controlling weight because they were consistent with the opinions of the state agency psychologists.[71] Finally, Campbell contends that if the ALJ had difficulty in

---

[67] *Id.* at 940.

[68] Tr. at 25.

[69] ECF# 19 at 14-15.

[70] *Id.*

[71] *Id.* at 15.

-13-

harmonizing the two opinions from Dr. Ariza, the ALJ was required to make every reasonable effort to contact Dr. Ariza for clarification – which was not done here – before ultimately discrediting the opinions.[72]

The ALJ in this case gave "little weight" to the opinions of Dr. Ariza on the grounds that these opinions – particularly the opinion of September, 2012 – "are not consistent with the substantial weight of the evidence."[73] As the Commissioner notes, this reason is broader and more inclusive than the portion of the ALJ's decision highlighted by Campbell that only speaks to Dr. Ariza's failure to specify an intervening event as the reason for any deterioration in Campbell's functioning between the first opinion and the second.[74]

Indeed, the ALJ preceded his discussion of the expert opinions in this case by extensively reviewing what he termed the "many inconsistencies between [Campbell's] subjective claim [of mental limitation] and the objective record...."[75] To that end, the ALJ in particular noted that Campbell's testimony at the hearing was that he had impairments in his ability to sustain concentration at work, and "marked complications" in his "ability to tolerate basic social interactions and workplace stress."[76] Yet, the ALJ specifically pointed to the following portions of the record as "inconsistent" with that testimony:

---

[72] *Id.*

[73] Tr. at 25.

[74] ECF # 19 at 15.

[75] Tr. at 24.

[76] *Id.*

-14-

- Campbell testified to regularly reading eastern philosophy, an activity which the ALJ found required "concentration, internal motivation and cognitive processing ... largely inconsistent with someone who has marked deficiencies in these broad areas of functioning;"

- Campbell testified to playing guitar with a band since the alleged onset date, which the ALJ determined displayed "active enjoyment of hobbies, along with intact concentration and memory skills," as well as an ability to "generally interact and relate with others, despite the presence of ODD;" and

- Although the record contains a reported suicide attempt and week-long hospitalization in December, 2012, the ALJ found this episode was "singular in nature," with "multiple reports in the record indicating that [Campbell] has expressed no subsequent suicidal ideations, and that his moods have significantly improved with medical compliance and abstinence from alcohol."[77]

I note further that the ALJ's reference to Campbell's improvement in mood was supported by citations to the record where Campbell told Dr. Ariza that he was "much happier" within a few months of being released from the hospital in 2012;[78] that his medications helped alleviate his symptoms;[79] that he was amazed he ever contemplated suicide because the thought of it is "so foreign" to him now;[80] and that he attributed his problems to alcohol abuse.[81]

---

[77] *Id.* (citing record).

[78] *Id.* at 358.

[79] *Id.* at 370.

[80] *Id.* at 355.

[81] *Id.* at 362, 365.

-15-

It was only after recounting this evidence in the record that the ALJ then examined Dr. Ariza's opinions. There, the ALJ noted that Dr. Ariza's opinion from May, 2012, stated that Campbell had "normal" ability to remember, understand and follow direction; "normal" ability to maintain concentration; "normal" ability to sustain concentration, persistence, and pace; and was "adequate" in his social interaction skills.[82] Further, this opinion also stated that  Campbell's ability to react to work stress involved with simple, routine, or repetitive tasks had "improved with medication."[83]

But, with no specific explanation as to why, a report from Dr. Ariza just four months later rated Campbell as "slightly limited" to "markedly limited" in all the areas where he had formerly been deemed "normal," while continuing to view him as "adequate" in areas of social interaction and adaptability.[84]

The ALJ stated that without an "intervening event" between the two reports to provide a basis for explaining the change in functioning, there was "little basis to accept [Dr. Ariza's] opinions as persuasive."[85] In addition, the ALJ concluded that the more restrictive opinion "bear[s] little resemblance to the numerous reports of improvements in these areas since [Campbell] stopped abusing alcohol" and is not consistent with Campbell's own testimony,

---

[82] *Id.* at 298.

[83] *Id.*

[84] *Id.* at 304-05.

[85] *Id.* at 25.

which is set forth above. Thus, the ALJ found that Dr. Ariza's opinions were not consistent with the substantial weight of the evidence and so would receive only "little weight."[86]

I note first that although opinions from treating sources are entitled to a presumption of controlling weight, that presumption is expressly conditioned on the opinions themselves being "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the case record." Thus, even if the opinion came from a relevant specialist, or was the product of long treatment relationship, it nevertheless would not be entitled to controlling weight if it lacked a basis in objective medical findings or was otherwise inconsistent with the other substantial evidence.

Here, Campbell's attempt to shift the focus to things like Dr. Ariza's specialization misses the point raised by the ALJ that his later opinion of significant limitations lacks grounding in any other evidence in the record. To that end, the ALJ's citation to the consistent therapy notes and hearing testimony describing normal levels of functioning serves to illustrate that Dr. Ariza's later report of more restrictive functioning is without support in either the objective medical record or in the other substantial evidence in the record, including Campbell's own testimony.

Moreover, Campbell has not established that the ALJ was required to re-contact Dr. Ariza before discounting his opinion. As the Commissioner observes, the ALJ is required to re-contact a treating source only when the information from that source is inadequate or

---

[86] *Id.* at 25.

unclear.[87] To that end, the Sixth Circuit teaches that a two-step analysis is employed in determining to re-contact a source. First, the opinion of the treating source must not be supported by the other evidence of record, and second, the ALJ must not be able to ascertain the basis of the source's opinion from the record.[88]

In this case, as in *Ferguson v. Commissioner of Social Security*, it seems clear that the first element of the two-part test is met, inasmuch as the record cited above points to the conclusion that the second opinion from Dr. Ariza was not supported by the other evidence of the record. However, the second element of the test is not met here, and so there was no requirement that the ALJ re-contact Dr. Ariza. Specifically, the second element, which goes to whether the ALJ is able to discern the basis of the source's opinion from the record, concerns issues such as illegibility in the source's supporting notes.[89] In this case, there is no issue concerning the legibility of Dr. Ariza's office records, and so there is no reason for the ALJ to contact Dr. Ariza to obtain a clarification of what was actually in those files.

Having determined that the ALJ did not err in discounting the opinions of Dr. Ariza, and also that there was no requirement that he re-contact Dr. Ariza for any clarification, I

---

[87] *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010); 20 C.F.R. § 404.1512(e).

[88] *Id.*

[89] *Toussaint v. Comm'r of Soc. Sec.*, No. 10-14827, 2012 WL 592198, at **8-9 (E.D. Mich. Feb. 1, 2012) (citations omitted).

note finally that the ALJ also properly discounted the opinions of the state agency reviewing sources for the same reasons as supported the decision concerning Dr. Ariza.[90]

Consistent with the foregoing discussion, it follows that the ALJ's credibility determination has the support of substantial evidence. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[91]  A court may not disturb the ALJ's credibility determination absent compelling reason.[92]

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain;  precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[93]  If  the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[94]

Here the ALJ discussed Campbell's daily activities, the duration and frequency of the mental problems he experienced in early 2012, the effectiveness of his medications and the lack of side effects therefrom, and his hospitalization for his suicidal ideations and course of

---

[90] *See*, Tr. at 25.

[91] *Buxton*, 246 F.3d at 773.

[92] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[93] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

[94] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

-19-

treatment thereafter.[95] After review of the ALJ's decision and the evidence in the transcript, I find no compelling reason to disturb the ALJ's credibility determination.

## Conclusion

Substantial evidence supports the finding of the Commissioner that Campbell had no disability. The denial of Campbell's application is affirmed.

IT IS SO ORDERED.

Dated: July 30, 2015                                      s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[95] Tr. at 24-25.

-20-